The next case today is United States v. John H. Nardozzi, Appeal No. 20-1093. Attorney Kretzer, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Seth Kretzer for Appellant Nardozzi. Your Honors, I would like to request two minutes to be reserved for rebuttal. Yes, you may have it. Thank you, Your Honors. Methodologically, Your Honors, this morning I would like to begin with my sufficiency challenges both to conspiracy and to the substantive counts, and then if time permits also to then address our argument about the special conditions of release versus oral pronouncement. I think there is no doubt that a read of the trial record in this case shows that there were a substantial number of paperwork mistakes regarding the tracking of expenses, checks, disbursements, taxes, so forth by numerous people involved, the characters at the trial, most significantly by the late Senator Joyce and also by the bookkeepers working for him. And to be fair, there were certainly some paperwork mistakes fairly attributable to my client, Mr. Nardozzi. And I don't run from that at all. I think the question to be decided, though, let's start with the conspiracy count, is whether or not the paperwork mistakes attributable to him is enough to go beyond the realm of being a mere mistake and rise to a finding of both reasonable evidence upon which a jury could base a finding of either conspiratorial content or guilty scienter, respectively. The piece of evidence that's probably most harmful to Mr. Nardozzi, what I would call his big mistake, regards the expensing of the loan. This was the loan that was forgiven to the late Senator Joyce, which would clearly have created a taxable event in that circumstance. And there's no doubt that Mr. Nardozzi neglected to account for part of that loan repayment dividend in the year 2014 on the personal return. There were corporate minutes that were submitted, and yet, unfortunately, that did not make it to the return. That was a mistake on his part. And yet, Your Honors, the evidence has unfolded over the course of the trial. As I've read it, there were three other clusters of wrongdoing, paperwork mistakes, which I would submit did not sufficiently involve Mr. Nardozzi such that the jury could find its requisite level of criminal scienter. First and foremost are these personal expenses. This probably took up most of the trial testimony. This is the fact that Senator Joyce ran a lot of impermissible personal expenses through his C Corporation, the private school tuition and the trips to the Caribbean and so forth. And yet, Your Honors, if Mr. Nardozzi, and this was not a tax evasion case, this was false filing, a conspiracy, if he was trying to conceal this since it would not be taxable, they certainly did a horrible job. All of these expenses, and the bookkeepers, the two bookkeepers who testified were very clear, all of these expenses were tracked under this broad category of legal expenses. And they didn't, my client, Mr. Nardozzi, didn't run and try to, you know, put those over where nobody could ever find them. All of those were reported on the Schedule C. Probably the most salient testimony I would submit in the entire trial is on page 115 of the case agent's, the second day of the case agent's testimony, where he admitted that in three of the four years, because of how these expenses were reported on the Schedule C, you actually had overpayments of taxes. And the one year, the fourth year, where you had the underpayment is only because this withdrawal from the SEP happened before the age of 59 and a half, which my client brought to Senator Joyce's attention. I pasted into my brief. Five minutes remaining. I pasted into my brief this March 15th email, and the government in their response put some of the reply emails along with it, but the most, the concluding sentence is, this will have a significant effect on your return. He's talking about the early withdrawal. If anyone was trying to defraud the government or submit a false filing, bringing to the attention of the taxpayer issues with the return certainly seems to run incorrect. Mr. Kretzler, you know, all of these arguments could and probably were made to the jury, which disagreed. And the standard on review here is whether any reasonable jury based on these facts could have concluded that there was a conspiracy. So, we're not the jury. Your arguments are jury arguments. Do you want to tell us why no reasonable jury could possibly have concluded there was no conspiracy? Yes, absolutely, Your Honor. On that count, one, the conspiracy count, it's not just conspiracy in the air. It was charged specifically a conspiracy between Nardozzi and Senator Joyce. A problem that the government had in this case was that obviously Senator Joyce had passed away before Mr. Nardozzi ever came to trial. It wasn't like he was there testifying, you know, nor were there any statements about Nardozzi that they had. Actually, that was a problem you had, I think. Well, he passed away. I mean, there was, you know, nothing. Yeah, and there's no denial anywhere in the record that the senator did not conspire with this tax accountant to do exactly what they did do. Well, yes, Your Honor. I think, of course, the question is how, of course, the fair question, how could I contend that no rational juror could reach this conclusion, and that's because they did not have direct evidence. They necessarily had to have indirect evidence, I would say, based on all these other witnesses who testified, and yet none of them certainly directly conspired with Senator Joyce. What about the repayment of the personal loan as a corporate expense? I'm looking at my notes. Maybe I took bad notes, but I see that in April of 2013, your client suggested the PC write off the loan by declaring a dividend to Joyce. That sounds like communication between two people to do something, and that at some point he then recharacterized the loan repayment as a legal fee, and that's what your client did. Well, Judge Craig, I certainly understand that, but argue that I think it's a little more nuanced than that in that the way the bookkeepers tracked all the expenses, they called them legal fees. So it wasn't as though there was something unique about this loan. I conceded at the outset. But how do you get from repayment of a loan to first being declared a dividend and then asking Brian to create corporate minutes to declare the dividend? That doesn't just happen by itself, and then including it in a catch-all legal fee thing. It sounds a little fishy, especially for a financially sophisticated person to be suggesting that someone do. I fail to see how any of those two steps could have been justified. I think the argument is this, and I concede that there's no doubt it probably would have been better if Senator Joyce had been working, law practice, as a pass-through entity rather than a C Corp. And yet I would commend the Court's attention to the testimonies of these two accountants, and it was not at all clear. Admittedly, there was a lot that was not clear. There were e-mails back and forth on many different subjects. Who created the corporate minutes? But again, just to sum up my argument as to sufficiency before I move on. Stay with that. I think Addendum 10 suggests your client asked someone to create the corporate minutes, and it doesn't show who then created them. But what possible justification would there be for creating corporate minutes to declare a dividend for the repayment as a repayment of a personal loan? We would submit, Your Honor, that would be enough for a finding of criminal intent, but for the fact that all of these expenses, including that repayment, or at least the exception, ultimately made it onto the Schedule C. So the fact that there were mirror images maybe shows sloppy paperwork, but it doesn't go that next step to the finding of criminal scienter. But it made it onto the Schedule C as a deductible expense, right? Correct, yes. And it wasn't deductible. It certainly didn't lie most favorable to the government's theory of the case. It was not deductible, no. So there you go. Your guy who's a sophisticated accountant takes something that's plainly not deductible, recommends minutes that falsify what its nature is, and then it ends up as a deductible expense on the return. As I said at the outset, Judge Carter, that was his probably momentary lapse in judgment, the worst piece of evidence that the government had, and yet we would argue it doesn't go the rest to carry the burden. Time has expired. Thank you, counsel. Thank you, Attorney Detterman. If you could unmute your audio and video at this time and introduce yourself on the record to proceed. Good morning. May it please the Court, Mark Detterman for the United States. Please proceed. Thank you, Your Honor. The evidence here I think is more than fishy. I think it's quite compelling that Nardozzi and Joyce conspired to evade Joyce's taxes and file false tax returns. There's e-mails attached to our brief which show this happening in all four of the allegations of all four of the objects of the conspiracy. First, there's an e-mail from Nardozzi to the bookkeeper asking her to make sure that she caught all of his personal expenses on the legal fees booking entry. Nardozzi then took that legal fees booking entry and entered it on the C-Corp tax return as a business expense when he knew they were personal expenses. As to the second, the SEPIRA, there's e-mails for Nardozzi asking how much of the corporate funds should I move to Mary. He doesn't say how much he was earned. There was no evidence that Mary worked for the corporation, for the professional corporation. Nardozzi asked how much should I move to it, and the response from Joyce is move the maximum amount possible for the SEPIRA to maximize the IRA. All of this works in concert. Because he was moving funds, putting them on the Schedule C, that enabled him to use an SEPIRA, and that gave him large deductions. He was able to take $80,000 a year in 2013 and 2014 tax-free by nearly maximizing his contribution and his wife's contribution when his wife did not work for the corporation. On the rollover, again, we have e-mails where Nardozzi does say that you can't do this. You can't buy this privately held stock by taking money out of your IRA without tax consequences, and Joyce responds to him saying there should be no taxes, that this was a rollover. Nardozzi reports it on Line 15A of the 2014 1040 as a $427,000 tax-free rollover when Nardozzi knew it could not be rolled over without the creation of an IRA, and Nardozzi had no information that it had been properly rolled over. Zero information. Again, those e-mails are attached to the back of our brief. Finally, on the personal loan, Judge Chiata discussed it thoroughly that he expensed his personal loan, and not only did he expense the personal loan, there was $100,000 that he reduced his personal loan for that didn't make it even onto the Schedule C. It just vanished. He declared this $200,000 dividend, and part of it, $100,000, just went away. It wasn't reported at all. His personal loan was reduced. He had forgiveness of debt income. That wasn't even reported on the Schedule C. Counsel, in the Pellants' brief, he tried to portray his client as just, I guess, the passive recipient of information from the bookkeepers. He makes the point that, well, if the bookkeepers were never indicted for anything, and I guess they were not, and I guess the logic is if they weren't doing anything, it was criminal. How could he be doing anything criminal if he simply relied on the information that they gave him? What was the government's view of the role of the bookkeepers in these transactions? Well, both bookkeepers testified that they were not experts and had not prepared tax returns, so they were bookkeepers, but they weren't tax experts. If you look at these emails, there's numerous emails of Nardozzi directing the bookkeepers how to treat certain items and what to do, for example, checking whether you missed any personal expenses. There's very clear evidence that the bookkeepers were doing what Nardozzi told them to, and that's what the bookkeepers testified. They just simply did what Joyce and Nardozzi told them to. I also want to point out that the district court gave an instruction to the jury that Nardozzi could rely on Joyce and the information provided by the bookkeepers, but if he had knowledge that was contrary to the information they were providing or that he couldn't simply ignore any other knowledge that he had. Five minutes remaining. So the jury was instructed, and they rejected the idea that this was the fault of the bookkeepers. Anything further, counsel? Not unless you have any more questions on special conditions. If, on rebuttal, anything is said which surprises you, we'll give you a minute to respond to that. Thank you, Your Honor. Thank you, Mr. Dediman. At this time, you can mute your audio and your video, and Mr. Kretzer, please reintroduce yourself on the record. Yes, Your Honor. Seth Kretzer again for Appellant Nardozzi. I would just like to pick up with one point that was asked about. If there was not an allegation that the bookkeepers were part of the conspiracy, then, of course, what does that say about how the government could prove up a conspiracy between my client and the late Senator Joyce? I think that argument is made even more strongly when one contrasts the situation, the prosecution of Mr. Nardozzi, vis-à-vis Senator Joyce's wife. I mean, if the contention is that Mary Joyce took these very large sub-contributions to which she was completely unentitled because she did not work at the company, I think it raises again the question that accountants are often in the situation that they have to catalyze information they receive from other sources. And I think the way the government proved this up at trial was they introduced the late Senator Joyce's state ethics forms, which, of course, were sworn statements by him as to where his wife worked or did not. But, of course, there was no evidence that Mr. Nardozzi ever saw those state ethics forms. I'm not really clear how they tied together. Certainly, Senator Joyce did work in real estate as part of his life. I'm sorry. A husband has no idea where his wife is working? Is that your argument? No, Your Honor. I'm sure that most— And that she is not working for a particular entity that she's claiming an IRA deduction to? That shows my point, Your Honor, that Mrs. Joyce was not charged. And the question is how does information as to where Mrs. Joyce works, fairly attributed to Mr. Nardozzi, it's not as though he had any access to the state ethics forms. I thought your client prepared joint returns? Is that not true? Yes. All right. Anything else? No, Your Honor. Thank you.  Yes, Your Honor. Mr. Detterman, do you want to say anything else? Just to add the point that there's an email from Nardozzi asking how much money from the corporation he should, quote, move to Mary. He doesn't say how much he earned, how much she worked. It's how much she moved to Mary. And the response from Joyce was move the max possible in order to, you know, maximize the IRA. So I think that's evidence of conspiracy regarding the false attribution of the wife's income. Thank you. Thank you. That concludes the argument in this case. Attorney Kretzer and Attorney Detterman, you should disconnect from the hearing at this time.